Cynthia A. ANGLEMYER,
Plaintiff–Appellant,

v.

HAMILTON COUNTY HOSPITAL; E.D. Reed, aka Skip Reed, Steve Schell; Larry Fallwell; Zeno Gould; Jimmy Grilliot; Magdalene Haslett; and Thelma Warner, Defendants–Appellees.

No. 94–3342.

United States Court of Appeals, Tenth Circuit.

June 20, 1995.

Larry G. Michel, Kennedy, Berkley, Yarnevich & Williamson, Chartered, Salina, KS, for plaintiff-appellant.

Jonathan B. Sprague, Post & Schell, P.C., Philadelphia, PA (A. James Johnston, Post & Schell, P.C., Philadelphia, PA, and Robert H. Gale, Jr., Syracuse, KS, with him on the brief), for defendants–appellees.

Before MOORE, LOGAN, Circuit Judges, and COOK, District Judge.*

JOHN P. MOORE, Circuit Judge.

Cynthia A. Anglemyer brought this action under 42 U.S.C. § 1983 alleging that she was improperly terminated from her employment at Hamilton County Hospital. Ms. Anglemyer raised both federal and pendent state law claims pursuant to 28 U.S.C. § 1367. Ms. Anglemyer's federal claims alleged her termination violated her Fourteenth Amendment procedural and substantive due process rights. Her state law claims alleged the hospital breached an implied employment contract between the parties, violated the Kansas Risk Management Act, Kan.Stat. Ann. § 65–4928(a) (1994), and terminated her

---

* Honorable H. Dale Cook, Senior District Judge, United States District Court for the Northern District of Oklahoma, sitting by designation.

in retaliation for her compliance with the Act. The district court granted summary judgment for the hospital on Ms. Anglemyer's federal claims and dismissed her pendent Kansas state law claims. We affirm.

## I.

Hamilton County Hospital is organized under state law, thereby making it subject to § 1983. The hospital provides for the health care needs of the rural western Kansas community.

During the course of her employment at the hospital, Ms. Anglemyer held a variety of positions with different job titles, duties, and responsibilities which she worked at simultaneously. Initially, she was hired as a staff nurse, and later was appointed Director of Nursing. Finally, she was assigned to three different positions—Risk Manager, Quality Assurance Coordinator, and Infection Control Nurse. Ultimately, Ms. Anglemyer voluntarily resigned as Director of Nursing, but remained in her risk management, quality assurance, infection control nurse, and staff nurse positions.

Ms. Anglemyer's risk management activities included performing the initial investigation of risk management problems and reporting to the risk management committee. In the summer of 1992, Ms. Anglemyer became concerned whether one of Dr. Bruce Alter's employees was involved with some missing Demerol and contacted Mary Truhe, who assisted hospitals in investigating missing drugs. After investigation, Ms. Truhe informed Ms. Anglemyer there was no conclusive evidence that would substantiate Ms. Anglemyer's concerns. Ms. Anglemyer then terminated her investigation of the missing Demerol, although she remained concerned about the discrepancies in the employee's documentation of Demerol supplies. Ms. Anglemyer either showed Ms. Truhe's letter or conveyed its contents to other members of the Risk Management Committee, but did not inform the hospital's Board of Directors or Dr. Alter, who had previously been critical of Ms. Anglemyer and the risk management program, about the letter.

At an executive session of the hospital Board of Directors, Dr. Alter and Dennis Carter, a County Commissioner, voiced a variety of complaints about Ms. Anglemyer. Their principal criticisms were that Ms. Anglemyer failed to inform the Board about Ms. Truhe's letter, and that Ms. Anglemyer used her position as risk manager to retaliate against hospital employees. After considering Dr. Alter's and Commissioner Carter's allegations, the Board voted to terminate Ms. Anglemyer from her quality assurance and risk management positions. Ms. Anglemyer was not present at the Board meeting, and was never given the opportunity to respond to the allegations leveled against her on that or any other occasion. Instead, she received notice of the Board's action when a letter by Skip Reed, Chairman of the Board, was pinned to the public bulletin board on the Director of Nurses door at the hospital. Ms. Anglemyer was only terminated from two of her positions at the hospital and was not asked to leave the hospital's employment entirely. She remained a staff nurse. Nine days after receiving Chairman Reed's letter, Ms. Anglemyer resigned from her staff nursing position because she believed the circumstances surrounding her termination from her quality assurance and risk management positions made it impossible for her to continue working at the hospital. She also believed she would not be able to work as a full-time staff nurse because the hospital's two such positions were currently occupied.

In the fall of 1992, all hospital employees, including Ms. Anglemyer, received a personnel handbook. The handbook contained a disclaimer which noted the at-will nature of the employer-employee relationship at the hospital. The disclaimer explained the handbook was not intended to be a contract, and the hospital could unilaterally change any of its employment policies, procedures, and benefits at any time. Under the heading, "The Employment Relationship," the handbook explicitly provided, "Although we hope that your employment relationship with us will be long-term, either you or Hamilton County Hospital and Extended Care Facility may terminate this agreement at any time, for any reason, with or without cause." Ms. Anglemyer also signed an acknowledgment

of receipt of the handbook which contained a similarly worded disclaimer.

Prior to the effective date of the personnel handbook, however, Ms. Anglemyer was involved in a number of meetings with hospital department heads, administrators, and other employees regarding the wording of the handbook. During at least one of these meetings, hospital administrators Stephen Kralik and Terri Deuel, in response to the concerns of numerous hospital employees, informed Ms. Anglemyer the hospital would follow a policy of terminating employees only for cause despite the disclaimers in the handbook. Ms. Anglemyer repeated this representation to other employees at a meeting that included members of the Board of Directors and was not corrected when she did so. In addition, no employee was terminated without cause during Mr. Kralik's tenure as chief hospital administrator.

The district court granted summary judgment for the hospital on Ms. Anglemyer's due process claims and dismissed her pendent state claims. First, the court granted summary judgment on Ms. Anglemyer's procedural due process claim on the ground she had no property interest in her continued employment. Initially, the court concluded no implied contract was created by the policies and procedures contained in the hospital's personnel handbook. In addition, the court held the Kansas Risk Management Act also did not create a property interest. Second, after disposing of all Ms. Anglemyer's federal claims, the district court exercised its discretion and dismissed her pendent state law claims without prejudice.[1]

On appeal, Ms. Anglemyer raises three issues. First, she argues the court erred in concluding she did not have a property interest in continued employment at the hospital based on an implied contract theory. She also argues the court improperly resolved this issue on summary judgment because of the existence of a genuine issue of material fact in dispute. Second, she contends the Kansas Risk Management Act created a property interest entitled to procedural due process protection. Third, Ms. Anglemyer argues the court abused its discretion by dismissing her pendent state law claims.

## II.

We review summary judgments de novo, applying Fed.R.Civ.P. 56 in identical fashion as the district court. *Hooks v. Diamond Crystal Specialty Foods, Inc.,* 997 F.2d 793, 796 (10th Cir.1993). On appeal, the evidence is considered in the light most favorable to the non-moving party. *Applied Genetics Int'l v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir.1990). Summary judgment is appropriate only if there is no genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986).

The Fourteenth Amendment's procedural due process protections apply only to an individual deprived of a recognized property or liberty interest. *Board of Regents v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). Property interests are created not by the Constitution itself, but may be defined by independent sources such as state statutes, regulations, municipal ordinances, university rules, and even express or implied contracts. *Id.* at 577, 92 S.Ct. at 2709; *Perry v. Sindermann,* 408 U.S. 593, 601–02, 92 S.Ct. 2694, 2699–2700, 33 L.Ed.2d 570 (1972); *Bishop v. Wood,* 426 U.S. 341, 344–45, 96 S.Ct. 2074, 2077–78, 48 L.Ed.2d 684 (1976); *Carnes v. Parker,* 922 F.2d 1506, 1509 (10th Cir.1991). In this case, Kansas contract law determines whether a public employee like Ms. Anglemyer has a legitimate entitlement to continued employment based on an implied contract theory. *Id.* at 1510.

---

1. The district court has issued a series of different orders in this case. First, the court granted in part and denied in part the hospital's motion to dismiss. *Anglemyer v. Hamilton County Hosp.,* 848 F.Supp. 938 (D.Kan.1994). Second, the court issued its summary judgment order, at issue here. *Anglemyer v. Hamilton County Hosp.,* No. 93–1168, 1994 WL 409618 (D.Kan. July 5, 1994) (unpublished). Finally, the court denied Ms. Anglemyer's motion to reconsider. *Anglemyer v. Hamilton County Hosp.,* No. 93–1168, 1994 WL 531414 (D.Kan. Sept. 16, 1994) (unpublished).

■ Like most states, Kansas historically has followed the common law doctrine of employment at-will. *Johnson v. National Beef Packing Co.*, 220 Kan. 52, 551 P.2d 779 (1976); *Swart v. Huston*, 154 Kan. 182, 117 P.2d 576 (1941). Employees are considered to be at-will in the absence of an express or implied contract. *Johnson*, 551 P.2d at 781. The existence of an implied contract depends on the intent of the parties, divined from the totality of the circumstances.

> Where it is alleged that an employment contract is one to be based upon the theory of "implied in fact," the understanding and intent of the parties is to be ascertained from several factors which include written and oral negotiations, the conduct of the parties from the commencement of the employment relationship, the usages of the business, the situation and objective of the parties giving rise to the relationship, the nature of the employment, and any other circumstances surrounding the employment relationship which would tend to explain or make clear the intention of the parties at the time said employment commenced.

*Morriss v. Coleman Co.*, 241 Kan. 501, 738 P.2d 841, 848–49 (1987) (quoting *Allegri v. Providence–St. Margaret Health Ctr.*, 9 Kan. App.2d 659, 684 P.2d 1031 (1984)). In *Morriss*, the Kansas Supreme Court concluded, "*Allegri* is important because it established clearly the rule that intent of the contracting parties is normally a question of fact for the jury and that the determination of whether there is an implied contract in employment requires a factual inquiry." *Morriss*, 738 P.2d at 848. This court has interpreted *Morriss* and its progeny as standing for the principle that, "whether an implied contract exists which creates a property interest in employment normally is a question of fact for the jury." *Koopman v. Water Dist. No. 1*, 972 F.2d 1160, 1164 (10th Cir.1992).

In this case, the district court concluded summary judgment was appropriate despite the general rule. The court reasoned:

> The only evidence that plaintiff has to establish an implied contract is her own subjective belief that she would not be terminated except for cause, testimony

that while Steve Kralik was CEO, employees were not terminated at random, and the fact that the hospital is located in a remote area of the state. This evidence is insufficient for a jury to find intent to contract for a term of employment or termination only for cause.

*Anglemyer v. Hamilton County Hosp.*, No. 93–1168, 1994 WL 409618, at *4 (D.Kan. July 5, 1994) (unpublished).

■ We believe the district court erred in granting summary judgment on this basis, although, as we discuss below, we believe the court reached the correct result. We have only been able to find two Kansas decisions which disposed of an implied contract claim on summary judgment. In *Dickens v. Snodgrass, Dunlap & Co.*, 255 Kan. 164, 872 P.2d 252 (1994), the Kansas Supreme Court upheld a grant of summary judgment for the employer when the employee failed to present any evidence contradicting a written, express contract specifying her at-will status. *Id.* 872 P.2d at 260. Similarly, in *Kastner v. Blue Cross & Blue Shield of Kan., Inc.*, 21 Kan.App.2d 16, 894 P.2d 909 (1995), the court concluded summary judgment in favor of the employer was appropriate when the employee "failed to come forward with evidence to establish a material issue of fact regarding the intent of the parties to form an implied-in-fact contract of employment." *Id.*, 894 P.2d at 918. Despite these two decisions, under Kansas law, summary judgment remains "rarely appropriate" in implied contract cases because of the necessity of determining both parties' subjective intent to form a contract. *Id.*, 894 P.2d at 916. The majority of other Kansas decisions have concluded the existence of an implied contract needed to be decided by the jury. *See, e.g., Brown v. United Methodist Homes for the Aged*, 249 Kan. 124, 815 P.2d 72 (1991); *Morriss*, 738 P.2d at 849; *Wiggins v. Housing Auth. of Kansas City*, 19 Kan.App.2d 610, 873 P.2d 1377 (1994); *Masterson v. Boliden–Allis, Inc.*, 19 Kan.App.2d 23, 865 P.2d 1031 (1993).

In contrast, the federal courts have been more willing to grant summary judgment in favor of employers when applying Kansas law. In *Farthing v. City of Shawnee, Kan.*,

39 F.3d 1131 (10th Cir.1994), this court upheld the district court's grant of summary judgment on the ground the plaintiff had failed to present any evidence adding "anything above and beyond the terms of the personnel manual." *Id.* at 1140. Similarly, in *Bullock v. Dillard Dep't. Stores, Inc.,* No. 91–2474–O, 1992 WL 350229 (D.Kan. Oct. 20, 1992) (unpublished), the court concluded the plaintiff had failed to present any specific evidence in addition to the personnel manual raising a genuine issue of material fact. *Id.,* at *9–14. Finally, in *Jonker v. Melvin Simon & Assoc.,* No. 86–1654, 1989 WL 31402 (D.Kan.1989) (unpublished), the court concluded neither the personnel manual nor the plaintiff's additional evidence established an implied contract between the parties as a matter of law. *Id.,* at *8–10. *But see Berry v. General Motors Corp.,* 838 F.Supp. 1479 (D.Kan.1993) (resolving implied contract of employment claim not on summary judgment, but after judicial fact-finding).

■ Ms. Anglemyer has presented evidence in addition to the contents of the hospital's personnel handbook to support her implied contract theory. Mr. Kralik's testimony indicates the hospital's past business practice was only to terminate employees for cause. In addition, the fact Ms. Anglemyer repeated the representation made to her by Ms. Deuel and Mr. Kralik that employees would only be fired for cause in a meeting which included members of the Board of Directors is critical. No one at that meeting corrected Ms. Anglemyer's probable misperception. We believe this evidence may indicate a general belief that the hospital only terminated its employees for cause. Typically, this evidence would be sufficient to present a jury question of whether an implied contract of employment existed. *Morriss,* 738 P.2d at 848; *Koopman,* 972 F.2d at 1164.[2]

However, the facts of this case distinguish it from the typical implied contract case because Ms. Anglemyer was not terminated by the Board's decision. Instead, her removal from her quality assurance and risk management positions merely resulted in a job reassignment because she remained employed at the hospital as a staff nurse. Therefore, the question becomes whether Ms. Anglemyer has a property interest amenable to procedural due process protection in her continued employment in a particular position under Kansas law. We believe she does not.

Ordinarily, we must apply Kansas law in determining whether a property interest exists. However, the parties have not cited any Kansas cases on this issue.[3] "Where no

2. The hospital argues the existence of the disclaimers in the personnel handbook and the receipt Ms. Anglemyer signed indicate it had no intent to form an implied contract. Because the disclaimer was specifically brought to Ms. Anglemyer's attention, it nullifies the hospital's intent as a matter of law. We disagree. In *Morriss,* the Kansas Supreme Court noted:

> The disclaimer in the supervisor's manual quoted above does not as a matter of law determine the issue. It has not been established that the disclaimer was brought to the personal attention of its employees or that it was intended by Coleman to create an unqualified employment-at-will relationship, **especially in view of the other provisions in the manual and the statements made by Coleman's supervisors to the employees.**

*Morriss v. Coleman Co.,* 241 Kan. 501, 738 P.2d 841, 849 (1987) (emphasis added). Ms. Anglemyer has presented evidence other than the terms of the handbook in support of her implied contract claim. In particular, Ms. Anglemyer's unchallenged statement at the meeting attended by members of the Board of Directors strongly suggests the hospital administration did not intend to follow an at-will employment policy. Be-

cause of this additional evidence, the disclaimers are not dispositive as a matter of law. In the ordinary case, the jury would evaluate the two disclaimers in conjunction with this extrinsic evidence to determine whether the parties intended to form an implied contract. Both would be part of the totality of circumstances analysis contemplated by *Morriss* and its progeny.

3. The hospital does cite *Hullman v. Board of Trustees of Pratt Community College,* 725 F.Supp. 1536 (D.Kan.1989), *aff'd on other grounds,* 950 F.2d 665 (10th Cir.1991). The court in *Hullman* cited several courts of appeals cases for the general proposition that "[c]ourts have been particularly reluctant to recognize a school employee's property interests in particular assignments." *Id.* at 1548. While, as we discuss below, *Hullman* is correct that generally no property interest in a particular job assignment exists, its legal analysis misses the mark. It seems clear the analytical structure of procedural due process jurisprudence drawn from *Roth* and *Sindermann* requires the question of whether a job reassignment or demotion implicates a property interest be one of state law. *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548

state cases exist on a point, we turn to other 'state court decisions, federal decisions, and the general weight and trend of authority.' " *Barnard v. Fireman's Fund Ins. Co.*, 996 F.2d 246, 248 (10th Cir.1993) (quoting *Armijo v. Ex Cam, Inc.*, 843 F.2d 406, 407 (10th Cir.1988)). *See also Farmers Alliance Mut. Ins. Co. v. Bakke*, 619 F.2d 885, 888 (10th Cir.1980); *Hartford v. Gibbons & Reed Co.*, 617 F.2d 567, 569 (10th Cir.1980).[4]

■ We believe the overwhelming weight of authority holds that no protected property interest is implicated when an employer reassigns or transfers an employee absent a specific statutory provision or contract term to the contrary. All of the courts of appeals that have addressed this issue have reached an identical conclusion. *See, e.g., Clark v. Township of Falls*, 890 F.2d 611, 617–19 (3d Cir.1989) (temporary six-week reassignment of police officer was not a constructive reduction in rank; therefore, no property interest was implicated under Pennsylvania law); *Huang v. Bd. of Governors of Univ. of North Carolina*, 902 F.2d 1134, 1141–44 (4th Cir. 1990) (tenured college professor had no property interest in particular departmental assignment under North Carolina law); *Kelleher v. Flawn*, 761 F.2d 1079, 1087 (5th Cir. 1985) (no property interest in a particular teaching assignment under Texas law); *Garvie v. Jackson*, 845 F.2d 647, 651–52 (6th Cir.1988) (no property interest under Tennessee law in university department head position); *Volk v. Coler*, 845 F.2d 1422, 1430 (7th Cir.1988) (no property interest in a particular employment position under Illinois law); *Raposa v. Meade Sch. Dist. 46–1*, 790 F.2d 1349, 1353 (8th Cir.1986) (no property interest in a particular teaching assignment pursuant to South Dakota law); *Lagos v. Modesto City Sch. Dist.*, 843 F.2d 347, 349–50 (9th Cir.) (tenured high school mathematics teacher had no property interest in his additional school position as baseball coach under California law), *cert. denied*, 488 U.S. 926, 109 S.Ct. 309, 102 L.Ed.2d 328 (1988); *Childers v. Independent Sch. Dist. No. 1*, 676 F.2d 1338, 1340–41 (10th Cir.1982) (high school teacher had no property interest in vocational-agriculture teaching assignment under Oklahoma law); *Maples v. Martin*, 858 F.2d 1546, 1550–51 (11th Cir.1988) (job transfer or reassignment did not implicate a property interest under Alabama law). These cases indicate that an administrative decision to reassign or transfer a particular employee absent a statutory or contractual provision to the contrary is left to the "unfettered discretion" of the employer. *Roth*, 408 U.S. at 567, 92 S.Ct. at 2704. We believe the Kansas Supreme Court would adopt a similar rule.

■ The cases we have catalogued are split on the relevance of a loss of rank, status, or salary as a result of the reassignment or transfer. *Compare, e.g., Childers*, 676 F.2d at 1341 (salary decrease and loss of other benefits irrelevant under Oklahoma law) *with Clark*, 890 F.2d at 617–19 (holding no reduction in rank occurred which was relevant under Pennsylvania law). Ms. Anglemyer argues her termination from her quality assurance and risk management positions would have resulted in a reduction of hours and salary. She bases this contention on the fact that at the time of her reassignment, the hospital's two full-time staff nursing positions were filled. These are not evidentiary facts, however, but merely her own speculation.

Even if the Kansas courts were to conclude a reduction of rank, status, or salary

---

(1972); *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). Under *Roth*, and its progeny, there simply cannot be a general federal rule on this issue. Because state law establishes the property interests which trigger procedural due process protections, crafting federal common law rules in this area implicates similar federalism and comity concerns as in diversity cases. *See generally Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Guaranty Trust Co. v. York*, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945).

4. This rule originated in diversity actions. We find it appropriate to adopt it in this context as well because *Roth* and *Sindermann* require a federal court to look to state law to provide the content of a property interest. Only after the question of whether a property interest exists is resolved does the federal court then address what process is due. *Mathews v. Eldridge*, 424 U.S. 319, 332–49, 96 S.Ct. 893, 901–10, 47 L.Ed.2d 18 (1976). The Court has made clear that this issue is one of federal law. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538–41, 105 S.Ct. 1487, 1491–93, 84 L.Ed.2d 494 (1985).

due to a job reassignment implicates a property interest, Ms. Anglemyer has not presented sufficient evidence that such a result occurred here. The central difficulty with Ms. Anglemyer's argument is she resigned from her staff nursing position nine days after the Board's reassignment. As a result, there is no evidence in the record which confirms Ms. Anglemyer's hypothesis that the hospital would not need her services as a full-time staff nurse. To the contrary, the record points in the opposite direction.

Chairman Reed's affidavit specifically states, "Mrs. Anglemyer could have continued to work at Hamilton County Hospital as a Staff Nurse, full time, subsequent to the decision to relieve her of her duties as Risk Manager with no loss of earnings." Further, Ms. Anglemyer herself testified in her deposition that no hospital representative ever informed her she no longer was needed as a full-time staff nurse. As a result of this evidence, Ms. Anglemyer's contention she would have suffered a salary diminishment remains only mere speculation. Because of Ms. Anglemyer's precipitous resignation, we have no way of determining the validity of her contentions. We lack a crystal ball to enlighten us to what might have been had Ms. Anglemyer stayed at the hospital longer.

We hold Ms. Anglemyer does not have a protected property interest in her quality assurance and risk management job assignments at the hospital. Furthermore, Ms. Anglemyer has failed to present sufficient evidence she would have suffered a salary decrease as a result of her reassignment to a staff nursing position.

### III.

■ Next, Ms. Anglemyer argues the Kansas Risk Management Act, Kan.Stat. Ann. §§ 65–4921—65–4930 (1994), creates a property interest in the continued retention of her quality assurance and risk management positions at the hospital. The Kansas Risk Management Act was enacted as part of comprehensive medical malpractice legislation in 1986. The Act requires Kansas health care facilities to create internal risk management review systems of their operations with reporting requirements to a state agency. Ms. Anglemyer relies upon § 65–4928 which prohibits discriminatory retaliation for compliance with the Act. This provision reads:

**65–4928. Employer retribution for reporting; prohibition; remedy.**

(a) No employer shall discharge or otherwise discriminate against any employee for making any report pursuant to K.S.A. 65–4923 or 65–4924.

(b) Any employer who violates the provisions of subsection (a) shall be liable to the aggrieved employee for damages for any wages or other benefits lost due to the discharge or discrimination plus a civil penalty in an amount not exceeding the amount of such damages. Such damages and civil penalty shall be recoverable in an individual action brought by the aggrieved employee. If the aggrieved employee substantially prevails on any of the allegations contained in the pleadings in an action allowed by this section, the court, in its discretion, may allow the employee reasonable attorney fees as part of the costs.

Subsection (a) refers to two other provisions of the Act. Kan.Stat.Ann. § 65–4923 concerns the Act's requirement that health care providers have a duty to disclose "reportable incidents" to the internal review committee who in turn must report to a state agency. Similarly, § 65–4924 creates a specific reporting requirement and procedures for "impaired" health care providers. An impaired provider is someone who cannot perform her professional duties and responsibilities with reasonable skill and safety. Section 65–4928 prevents retaliation against a risk management employee for her compliance with these two reporting requirements. Overall, the Act is structured like many whistleblower statutes to prevent an employer from retaliating against an employee for reporting incidents the Kansas legislature wanted reported in the public interest. *See, e.g.,* Whistleblower Protection Act of 1989, 5 U.S.C.A. § 1213 (Supp.1995).

The district court concluded the Act did not establish a property interest. The court reasoned the Act prohibits only retaliatory terminations and does not require termi-

---

**541**

nation for cause or otherwise limit a hospital's employment decisions. We agree with that analysis. One cannot reasonably read the Act as creating a generalized property interest in continued employment for risk managers or establishing that a risk manager may only be terminated for cause. Ms. Anglemyer's statutory interpretation reads more into the Act than is there. We hold the Kansas Risk Management Act does not create a property interest for procedural due process purposes.[5]

**IV.**

Last, Ms. Anglemyer argues the district court improperly dismissed her pendent state law claims. After resolving all her federal claims, the district court exercised its discretion and dismissed Ms. Anglemyer's remaining state law claims. *See* 28 U.S.C. § 1367(c)(3); *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). We review the court's decision for an abuse of its discretion. *Blake v. Dickason,* 997 F.2d 749, 751 (10th Cir.1993).

We have previously discussed the appropriate analysis for a district court considering dismissing pendent state claims. *Thatcher Enter. v. Cache County Corp.,* 902 F.2d 1472 (10th Cir.1990). In *Thatcher,* we noted a "district court has discretion to try state claims in the absence of any triable federal claims." *Id.* at 1478. "[H]owever, that discretion should be exercised in those cases in which, given the nature and extent of pretrial proceedings, judicial economy, convenience, and fairness would be served by retaining jurisdiction." *Id.* The district court determined dismissal was appropriate after concluding none of the four *Thatcher* factors would be served by its retaining jurisdiction. *Anglemyer,* 1994 WL 409618, at *5.

Ms. Anglemyer argues dismissal was inappropriate because the parties had completed all the necessary pretrial proceedings; therefore, judicial economy and convenience would be served by the district court retaining jurisdiction to avoid the expense and delay of another round of pretrial proceedings in state court. Ms. Anglemyer's argument is not unsound. The district court itself concluded dismissal was appropriate despite the fact that "discovery has been completed." *Id.*

We have previously expressed concern that district courts be aware of the extent of the litigants' pretrial efforts. "A federal court justifiably may retain jurisdiction of the pendent claims when substantial time and energy have been expended on the case prior to the disposition of the federal claims." *Jones v. Intermountain Power Project,* 794 F.2d 546, 550 (10th Cir.1986) (citing *Transok Pipeline Co. v. Darks,* 565 F.2d 1150, 1155 (10th Cir.1977), *cert. denied,* 435 U.S. 1006, 98 S.Ct. 1876, 56 L.Ed.2d 388 (1978)). However, we do not have to decide whether the court insufficiently took the extent of the pretrial proceedings into consideration because there is an independent reason for dismissing Ms. Anglemyer's pendent state claims. In her complaint (Count III), she alleged the hospital violated the Kansas Risk Management Act. We believe the Kansas courts are the appropriate forum to decide this novel and complex issue of state law. *See* 28 U.S.C. § 1367(c)(1) (federal courts may decline to exercise supplemental jurisdiction in cases raising novel or complex issues of state law). We hold the district court did not abuse its discretion in dismissing Ms. Anglemyer's pendent state law claims.[6]

For the foregoing reasons, the district court's judgment is **AFFIRMED.**

5. Whether the hospital's reassignment of Ms. Anglemyer violated the Act presents a distinct inquiry. Nothing in our discussion should be read as prejudging this issue, since that particular question is not before us.

6. Although the hospital and the individual defendants raise additional arguments, our disposition of this appeal renders them moot.