**BOCK ASSOCIATES, Plaintiff,**

v.

**Rochelle CHRONISTER, in her capacity as Secretary of the Kansas Department of Social and Rehabilitation Services, Defendant.**

No. 96–4110–RDR.

United States District Court, D. Kansas.

Dec. 3, 1996.

Order Denying Reconsideration Feb. 25, 1997.

970

Thomas L. Griswold, Payne & Jones, Chtd., Overland Park, KS, Jeff H. Eckland, Elizabeth L. Taylor, William L. Roberts, Faegre & Benson, L.L.P., Minneapolis, MN, for Bock Associates.

Reid Stacey, Social & Rehabilitation Services, Topeka, KS, for Rochelle Chronister.

## MEMORANDUM AND ORDER

ROGERS, District Judge.

This case is now before the court upon defendant's motion to dismiss the first amended complaint.

### I. PLAINTIFF'S CLAIMS

The first amended complaint alleges that plaintiff contracted with the State of Kansas to perform "preadmission screening and resident review" ("PASARR") services for the state's Medicaid program. Of course, Medicaid is funded with state and federal money, and there are state and federal regulations governing the program. PASARR is a federal requirement. The goals of the requirement are: to ensure that only legally eligible individuals in nursing facilities receive Medicaid benefits; to screen patients suspected of suffering from mental illness for the type of specialized services that are needed; and to refer patients, when appropriate, to less costly alternative services. Under federal regulations, the screening of persons with mental illness must be performed by an entity other than the state mental health authority. Since the state mental health authority in Kansas is the Department of Social and Rehabilitation Services ("SRS"), some PASARR services must be performed by a different agency or entity.

Prior to 1993, Kansas Foundation for Medical Care ("KFMC") contracted with SRS to provide PASARR services under the Kansas Preadmission Assessment and Referral Program ("KPARP"). Demonstrated knowledge of the range and availability of community based services offered in the geographic region was the only standard SRS actually applied to assessors hired by KFMC, although the contract contained specific education and experience standards.

In 1993, SRS solicited proposals for continuing the KPARP program for three years. Plaintiff's proposal was chosen. The contract between plaintiff and SRS contained education and experience standards for assessors conducting client interviews as part of the Kansas Preadmission Assessment and Referral Instrument. This "instrument" was a means of collecting information concerning patient needs. But, during plaintiff's performance of the contract, the education and experience standards were not implemented and SRS expressly authorized and directed plaintiff to continue to use former KFMC assessors, even if they did not meet the education and experience standards.

Because the PASARR program was shifted by the state legislature from SRS to the Department of Aging, plaintiff and SRS agreed to terminate their contract on December 31, 1994. Since that time, defendant has refused to fully reimburse plaintiff for its services, and furthermore has demanded a refund from plaintiff. Defendant's position is based upon an internal audit which concluded, *inter alia*, that plaintiff had billed for assessments not completed by qualified assessors. There has been no claim, however, that an unqualified assessor improperly placed a client or improperly performed a job.

Plaintiff alleges that the qualifications of the assessors was an arbitrary and capricious reason for defendant's actions because: 1) SRS did not audit the prior contractor (KFMC) in spite of indications of mismanagement found by plaintiff; 2) the qualification standards were more stringent than those required of the prior contractor, other contractors and SRS interns; 3) the assessors used by plaintiff were used previously by KFMC or satisfied the standards actually imposed upon KFMC by SRS; 4) SRS never notified plaintiff that the assessors were unqualified; 5) the assessors met the *de facto* standards employed by SRS; 6) there is no claim by SRS that the assessors made improper decisions; and 7) SRS has not enforced the qualification standards against other contractors and has attempted to avoid scrutiny by the federal government on this issue.

When SRS refused to fully compensate plaintiff for its services and asked for a refund, SRS informed plaintiff of its right to pursue administrative review. The briefs

upon the instant motion indicate that plaintiff requested administrative review of SRS's demand and withholding of reimbursement. But, this administrative review has been stayed pending this action.

On the basis of these allegations, plaintiff contends: that its rights under the Medicaid statute have been violated (Count I); that its rights to procedural and substantive due process have been violated (Counts II and III); and that its equal protection rights have been violated (Count IV).

## II. *ARGUMENTS FOR DISMISSAL*

A. *Service of process.* At the outset, we reject defendant's claim of improper service of the complaint. It appears from the case file that defendant was personally served with the first amended complaint in this case.

■ B. *Defendant's eligibility to be sued under § 1983.* We also reject defendant's contention that this case should be dismissed because defendant is not a "person" for purposes of § 1983.[1] Rochelle Chronister, the Secretary of SRS, is the named defendant in this case. She is being sued in her official capacity for injunctive and declaratory relief. In such capacity, she is a "person" for purposes of § 1983 when she is sued for prospective relief. *Will v. Michigan Department of State Police,* 491 U.S. 58, 71 n. 10, 109 S.Ct. 2304, 2312 n. 10, 105 L.Ed.2d 45 (1989); *Williams v. Commonwealth of Kentucky,* 24 F.3d 1526, 1544 (6th Cir.) *cert. denied,* 513 U.S. 947, 115 S.Ct. 358, 130 L.Ed.2d 312 (1994) (refusing to dismiss official capacity claims for declaratory and injunctive relief); *Tang v. State of Rhode Island,* 904 F.Supp. 55, 60 (D.R.I.1995) (same).

C. *Eleventh Amendment.* Nevertheless, we are convinced that defendant has presented valid grounds to dismiss this case. First, we believe the Eleventh Amendment bars this court from hearing this case. The first amended complaint asks for a declaratory judgment that plaintiff is entitled to be compensated for the preadmission assessments it

performed and precluding defendant from seeking reimbursement. The complaint also asks for an order enjoining defendant from seeking to recover money from plaintiff.

■ Of course, the Eleventh Amendment bars this court from hearing suits against any state unless the state consents to being sued or unless Congress has unequivocally abrogated the immunity from suit in the exercise of its power. *Green v. Mansour,* 474 U.S. 64, 68, 106 S.Ct. 423, 425–26, 88 L.Ed.2d 371 (1985). The State of Kansas is not a named defendant in this case. Instead, as mentioned previously, Rochelle Chronister is the defendant in her official capacity. "The general rule is that relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter." *Hawaii v. Gordon,* 373 U.S. 57, 58, 83 S.Ct. 1052, 1053, 10 L.Ed.2d 191 (1963). A decree operates against the state if "the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act." *Dugan v. Rank,* 372 U.S. 609, 620, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15 (1963). Plaintiff seeks a judgment which, although labeled as a declaratory judgment, in effect would require the State of Kansas to pay money from its treasury to plaintiff for the assessments plaintiff has performed. Plaintiff cannot avoid the provisions of the Eleventh Amendment by seeking an injunctive and declaratory judgment against a state official, if the judgment would be tantamount to an award of damages against the State of Kansas. *Green,* 474 U.S. at 73, 106 S.Ct. at 428 (1985); *MSA Realty Corp. v. State of Illinois,* 990 F.2d 288, 295 (7th Cir.1993) (Eleventh Amendment bars action seeking declaration of constitutional violation and injunction requiring state to return full sales tax increment to municipality to pay debt service on bonds). We believe the effect of the judgment plaintiff seeks in this case would be an order requiring the State of Kansas to pay money

---

**1.** Section 1983 provides in part: "every *person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subject or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." (emphasis added.)

to plaintiff. Therefore, the motion to dismiss may be granted on Eleventh Amendment grounds.

D. *Failure to state a claim.* However, even if the Eleventh Amendment did not bar this action, we believe the case must be dismissed because the first amended complaint fails to state a claim.

The standard for dismissal on a Federal Rule of Civil Procedure 12(b)(6) motion is well-established: "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). The court must accept as true all well-pleaded allegations and must draw all reasonable inferences in favor of the plaintiff. *Miree v. DeKalb County,* 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 2492 n. 2, 53 L.Ed.2d 557 (1977); *Mortensen v. First Federal Savings & Loan Association,* 549 F.2d 884, 891 (3d Cir.1977).

■ *Count I—Violation of the Medicaid statute.* Count I of the complaint alleges that the Medicaid statute creates a federal right to compensation which is enforceable under 42 U.S.C. § 1983 and which was violated by defendant. Defendant asserts that plaintiff has no private cause of action under § 1983 for a violation of the Medicaid statute.

Plaintiff asserts that the following statutory provisions and regulations provide a basis for a cause of action under § 1983:

42 U.S.C. § 1396a(a)(4)—"A State plan for medical assistance must—provide (A) such methods of administration ... as are found by the Secretary to be necessary for the proper and efficient operation of the plan ..."

42 U.S.C. § 1396a(a)(19)—"A State plan for medical assistance must—provide such safeguards as may be necessary to assure that eligibility for care and services under the plan will be determined, and such care and services will be provided, in a manner consistent with simplicity of administration and the best interests of the recipients."

42 U.S.C. § 1396r(b)(3)(F)—". . . a nursing facility must not admit on or after January 1, 1989, any new resident who (i) is mentally ill ... unless the State mental health authority has determined (based on an independent physical and mental evaluation performed by a person or entity other than the State mental health authority) prior to admission that, because of the physical and mental condition of the individual, the individual requires the level of services provided by a nursing facility, and, if the individual requires such level of services, whether the individual requires specialized services for mental illness ..."

42 U.S.C. § 1396r(e)(7)(A)—"Effective January 1, 1989, the State must have in effect a preadmission screening program, for making determinations ... described in subsection (b)(3)(F) of this section for mentally ill and mentally retarded individuals ... who are admitted to nursing facilities on or after January 1, 1989."

42 C.F.R. § 483.106(d)(1)—"The PASARR determinations of whether an individual requires the level of services provided by a [nursing facility] and whether specialized services are needed—(1) For individuals with mental illness, must be made by the State mental health authority and be based on an independent physical and mental evaluation performed by a person or entity other than the State mental health authority ..."

42 U.S.C. § 1396a(a)(13)(A)—"A State plan for medical assistance must provide—for payment ... of the hospital services, nursing facility services, and services in an intermediate care facility for the mentally retarded provided under the plan through the use of rates (determined in accordance with methods and standards developed by the State which, in the case of nursing facilities, take into account the costs ... of complying with subsections (b) (other than paragraph (3)(F) thereof), (c) and (d) of section 1396r of this title and provide (in the case of a nursing facility with a waiver under section 1396r(b)(4)(C)(ii) of this title) for an appropriate reduction to take into account the lower costs (if any) of the facility for nursing care, and which, in the case of hospitals, take into account the situation of hospitals which serve a disproportionate number of low income patients with special needs and provide, in the case of hospital patients receiving services at an inappropriate level of care ..., for lower reimbursement rates reflecting the level of

care actually received ... which the State finds, and makes assurances satisfactory to the Secretary are reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities in order to provide care and services in conformity with applicable State and Federal laws, regulations, and quality and safety standards and to assure that individuals eligible for medical assistance have reasonable access ... to inpatient hospital services of adequate quality; and such State makes further assurances, satisfactory to the Secretary, for the filing of uniform costs reports by each hospital, nursing facility, and intermediate care facility for the mentally retarded and periodic audits by the State of such reports;" 42 U.S.C. § 1396b(a)(2)(C)—"From the sums appropriated therefor, the Secretary ... shall pay to each State which has a plan approved under this subchapter, for each quarter, beginning with the quarter commencing January 1, 1966—(c) an amount equal to 75 percent of so much of the sums expended during such quarter (as found necessary by the Secretary for the proper and efficient administration of the State plan) as are attributable to preadmission screening and resident review activities conducted by the State under section 1396r(e)(7) of this title;"

In *Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), the Supreme Court established that a remedy exists under § 1983 for some violations of federal statutes. *Suter v. Artist M.*, 503 U.S. 347, 355, 112 S.Ct. 1360, 1366, 118 L.Ed.2d 1 (1992). No § 1983 remedy is present, however " 'where Congress has foreclosed such enforcement of the statute in the enactment itself and where the statute did not create enforceable rights, privileges, or immunities within the meaning of § 1983.' " *Id.*, quoting, *Wright v. Roanoke Redevelopment and Housing Authority*, 479 U.S. 418, 423, 107 S.Ct. 766, 770, 93 L.Ed.2d 781 (1987).

Under *Wilder v. Virginia Hospital Ass'n*, 496 U.S. 498, 509, 110 S.Ct. 2510, 2517, 110 L.Ed.2d 455 (1990), whether a federal law creates an enforceable right depends upon: 1) whether the law was intended to benefit the plaintiff; 2) whether the law creates a binding obligation on the state or merely establishes a congressional preference; and 3) whether the asserted interest is so vague and amorphous that it is beyond the competence of the judiciary to enforce.

In the instant case, plaintiff is attempting to use § 1983 to enforce a right to just compensation for services required under the Medicaid statute. Somewhat similarly, in *Wilder* a health care provider organization was successful in establishing a right to reasonable and adequate compensation under the so-called "Boren Amendment" to the Medicaid statute. However, the Boren Amendment specifically and expressly required a state Medicaid plan to provide for payment for health care services under methods and standards which were determined to be reasonable and adequate to meet the needs of efficiently and economically operated facilities. 42 U.S.C. § 1396a(a)(13)(A). The Supreme Court found that there was little doubt that health care providers were the intended beneficiaries of the Boren Amendment. *Id.* at 510, 110 S.Ct. at 2517–18. The Court further found that the provisions of the Boren Amendment were intended to be mandatory upon state Medicaid programs and that the provisions were enforceable by the judiciary. *Id.* at 512 & 519, 110 S.Ct. at 2518–19 & 2522–23.

In contrast, the court finds no indication that plaintiff is an intended beneficiary of the PASARR requirements. Instead, PASARR appears intended to improve the quality of care for patients and to save money for the state and federal governments. See *Martin v. Voinovich*, 840 F.Supp. 1175, 1200 (S.D.Ohio 1993); *Idaho Health Care Ass'n v. Sullivan*, 716 F.Supp. 464, 466 (D.Idaho 1989). There is no statement in the statute or the regulations cited by plaintiff which specifies how a state Medicaid plan must compensate providers of screening services. The law merely mandates that in some situations the state must have an independent entity perform the screening program. The law expresses no requirement or preference regarding compensation for companies performing PASARR services. Furthermore, the law establishes no enforceable standard of compensation which this court could apply. Accordingly, the court shall dismiss plaintiff's claim under the Medicaid statute as unenforceable under § 1983.

■ *Count II—Procedural Due Process.* Plaintiff asserts that it has a property interest in compensation for the services which it has rendered. Plaintiff further contends that the failure of SRS to provide plaintiff with any notice that its assessors would be considered unqualified or to provide plaintiff with an opportunity to cure the alleged deficiency, robbed plaintiff of meaningful notice and opportunity to be heard prior to the deprivation of plaintiff's property interest.

The procedural due process protections of the Fourteenth Amendment apply when someone is deprived of a recognized property or liberty interest. *Board of Regents v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972).

> "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it."

*Id.* at 577, 92 S.Ct. at 2709. "Property interests are created not by the Constitution itself, but may be defined by independent sources such as state statutes, regulations, municipal ordinances, university rules, and even express or implied contracts." *Anglemyer v. Hamilton County Hospital,* 58 F.3d 533, 536 (10th Cir.1995).

The court is unaware of a state or federal statute or regulation which establishes plaintiff's right to compensation in this case. Nor is the court aware of a Kansas court case which holds that independent contractors with the State have a property interest in just compensation. Finally, the court does not know of authority for the proposition that a property interest exists in the waiver or implied modification of contractual conditions by a state contracting agency.

Several circuit courts have held that alleged breaches in contracts to provide services to governmental entities are not violations of due process rights either because a property interest was not involved or because the right to litigate the matter in court was sufficient "due process." *Dover Elevator Co. v. Arkansas State University,* 64 F.3d 442, 446 (8th Cir.1995) (allegation of breach in contract with state to maintain elevators insufficient to state a constitutional violation); *Mid–American Waste v. City of Gary,* 49 F.3d 286 (7th Cir.1995) (opportunity to litigate alleged breach in landfill lease satisfies due process rights); *Unger v. National Residents Matching Program,* 928 F.2d 1392, 1397–1400 (3rd Cir.1991) (no property interest in continued operation of graduate residency program to which plaintiff had been admitted); *S & D Maintenance Co. v. Goldin,* 844 F.2d 962 (2d Cir.1988) (New York state law and contract provisions establish no property interest in prompt payment or continuation of contract with city to maintain parking meters); *San Bernardino Physicians' Services Medical Group v. County of San Bernardino,* 825 F.2d 1404 (9th Cir. 1987) (no property interest in continuation of contract to provide medical services to county); *Boucvalt v. Board of Commissioners,* 798 F.2d 722, 729–30 (5th Cir.1986) (postdeprivation contract remedy is all process due to anesthesiologist whose contract with a public hospital was terminated); see also, *Linan–Faye Construction Co. v. Housing Authority of Camden,* 49 F.3d 915, 932 (3rd Cir.1995) (no property interest in continuation of housing renovation contract); *Terminate Control Corp. v. Horowitz,* 28 F.3d 1335, 1351–52 (2nd Cir.1994) (property interest in payment for past school repair work sufficiently protected by state court remedies); *Martz v. Incorporated Village of Valley Stream,* 22 F.3d 26, 31 (2nd Cir.1994) (right to payment on contract for legal services does not rise to the level of a constitutionally protected property interest); *Reich v. Beharry,* 883 F.2d 239, 242–43 (3rd Cir.1989) (no predeprivation due process owed to attorney who was not paid by county for his services).

Plaintiff has not alleged that parts of its contract with SRS or that state laws or regulations establish a property interest or entitlement to advance notice from defendant that the qualifications standards for assessors would be enforced. This appears to be a mere desire or unilateral expectation by plaintiff. Assuming plaintiff has a property interest in the money plaintiff has been paid for its services, plaintiff has a right to an administrative hearing and ultimately judicial review prior to being required to refund that money. Plaintiff does not allege the contrary. Nor does plaintiff allege that this

hearing will violate due process standards. Finally, plaintiff may have a claim of entitlement to additional payment for services rendered to SRS, but again, there is no allegation that the opportunity to litigate this matter before an administrative agency and, if necessary, a state court fails to comport with the due process requirements of the Constitution.

Plaintiff's cause of action appears to arise from a simple breach of contract. In some circumstances, this would be sufficient to bring a procedural due process claim. However, given the kind of contract alleged, the kind of breach alleged, and the kind of hearing available to plaintiff to vindicate plaintiff's position, the court believes plaintiff has failed to state a claim for the deprivation of a property right without due process. See *Dover Elevator Co.*, 64 F.3d at 446.

■ *Count III—Substantive due process.* As part of its claim of a substantive due process violation, plaintiff alleges: that it has a protected property interest in compensation for the services it has rendered; that SRS has denied compensation to plaintiff because of a shortage of revenue; and that SRS acted arbitrarily and capriciously in refusing to compensate plaintiff and in asserting as justification standards which SRS told plaintiff to ignore and which SRS had ignored or not applied to others.

These allegations do not state a claim for a violation of substantive due process. The doctrine of substantive due process is applied for the protection of fundamental rights. It "forbids the government to infringe certain 'fundamental' liberty interests *at all*, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." *Reno v. Flores*, 507 U.S. 292, 302, 113 S.Ct. 1439, 1447, 123 L.Ed.2d 1 (1993). The court does not believe a corporation's right to payment for services rendered under a contract is a fundamental right protected under the doctrine of substantive due process. See *National Paint & Coatings v. City of Chicago*, 45 F.3d 1124, 1129 (7th Cir.1995) ("corporations do not have fundamental rights"); *Mangels v. Pena*, 789 F.2d 836, 839 (10th Cir.1986) ("Rights of substantive due process are founded not upon state provisions but upon deeply rooted notions of fundamental personal interests derived from the Constitution."). Otherwise, almost all public contract disputes could be litigated as constitutional questions. Courts have avoided construing the Due Process Clause in such a broad fashion. E.g., *Reich*, 883 F.2d at 242; *Bleeker v. Dukakis*, 665 F.2d 401, 403 (1st Cir.1981) (Breyer, J.). The Tenth Circuit has held that violations of local ordinances are not *per se* claims of denial of substantive due process. *Phillips v. Calhoun*, 956 F.2d 949, 954 (10th Cir.1992) (citing, *Coniston Corp. v. Village of Hoffman Estates*, 844 F.2d 461, 467 (7th Cir.1988)). This leads the court to conclude that the allegations of a breach of contract or waiver of contractual provisions in this case also fail to state a claim of denial of substantive due process. See also, *Local 342 v. Town Board*, 31 F.3d 1191, 1196 (2nd Cir.1994) ("simple, state-law contractual rights, without more, are [not] worthy of substantive due process protection.").

The court acknowledges that plaintiff also alleges arbitrary action. "Substantive due process protects against government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense, but not against government action that is 'incorrect or ill-advised.'" *Kaluczky v. City of White Plains*, 57 F.3d 202, 211 (2nd Cir.1995) (quoting, *Lowrance v. Achtyl*, 20 F.3d 529, 537 (2d Cir.1994)). "[G]overnment action might be so arbitrary that it violates substantive due process 'regardless of the fairness of the procedures used.'" *Lowrance*, 20 F.3d at 537 (quoting *Foucha v. Louisiana*, 504 U.S. 71, 80, 112 S.Ct. 1780, 1785–86, 118 L.Ed.2d 437 (1992)).

As stated before, in this case the alleged government action attacked by plaintiff does not violate a right so fundamental that it is unconstitutional regardless of the procedures available to contest the action. But, in addition, there is no allegation that the process available to plaintiff, through state administrative and judicial procedures, is insufficient to protect that right from unfair or arbitrary infringement. This is another reason to dismiss the substantive due process claim. See *Mid–American Waste*, 49 F.3d at 291–92.

■ *Count IV—Equal Protection.* Plaintiff alleges that SRS has and continues to enforce qualification standards against plain-

tiff which SRS has not enforced against similar contractors. Plaintiff further contends that SRS has committed this intentional discrimination with the purpose of depriving plaintiff compensation which plaintiff is owed.

This is not sufficient to state a claim of an equal protection violation. A state agency violates the equal protection rights of a person by selectively applying a facially lawful state regulation when:

"(1) the person, compared with others similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person. *Wayte v. United States,* 470 U.S. 598, 608–09, 105 S.Ct. 1524, 1531–32, 84 L.Ed.2d 547 (1985); *LeClair v. Saunders,* 627 F.2d 606, 609–10 (2d Cir.1980), *cert. denied,* 450 U.S. 959, 101 S.Ct. 1418, 67 L.Ed.2d 383 (1981)."

*FSK Drug Corp. v. Perales,* 960 F.2d 6, 10 (2d Cir.1992); cf., *Futernick v. Sumpter Township,* 78 F.3d 1051, 1057–58 (6th Cir.) *cert. denied,* —— U.S. ——, 117 S.Ct. 296, 136 L.Ed.2d 215 (1996) (malice or bad faith not sufficient to state a claim for selective enforcement). The Tenth Circuit has stated more generally that:

[W]hen the discrimination is not aimed at a "suspect class", a plaintiff must show intentional or purposeful discrimination. *Snowden v. Hughes,* 321 U.S. 1, 8, 64 S.Ct. 397 [401], 88 L.Ed. 497 (1944).

Mere failure to prosecute other offenders is no basis for a finding of denial of equal protection. "[T]he conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation." *Oyler v. Boles,* 368 U.S. 448, 456, 82 S.Ct. 501, 506, 7 L.Ed.2d 446 (1962). Selective enforcement without malicious intent may be justified when a test case is needed to clarify a doubtful law, *Mackay Telegraph Co. v. Little Rock,* 250 U.S. 94, 100, 39 S.Ct. 428 [430–31], 63 L.Ed. 863 (1919), or when officials seek to prosecute a particularly egregious violation and thereby deter other violators. *People v. Utica Daw's Drug Co.,* 16 A.D.2d 12, 225 N.Y.S.2d 128, 4 A.L.R.3d 393 (1962).

*Cook v. City of Price,* 566 F.2d 699, 701 (10th Cir.1977).

■ While plaintiff alleges "a practice of intentional discrimination" and conduct "with the intent and purpose" of depriving plaintiff of compensation, these broad characterizations are insufficient to state a claim for denial of equal protection. "Discriminatory purpose," which is an essential element of an equal protection violation (*Lewis v. City of Fort Collins,* 903 F.2d 752, 755 n. 1 (10th Cir.1990)), "implies more than intent as volition or intent as awareness of consequences." *Personnel Adm'r v. Feeney,* 442 U.S. 256, 279, 99 S.Ct. 2282, 2296, 60 L.Ed.2d 870 (1979). "Rather, it implies that a decisionmaker 'selected or reaffirmed a particular course of action at least in part "because of," not merely "in spite of," its adverse effects upon an identifiable group.'" *Welsh v. City of Tulsa,* 977 F.2d 1415, 1420 (10th Cir.1992) quoting, *Feeney,* 442 U.S. at 279, 99 S.Ct. at 2296.

Plaintiff's allegations do not accuse defendant of treating plaintiff differently because of plaintiff's membership in a particular group or because of constitutionally protected activity or because of malice or an intent to injure. As in *Snowden v. Hughes,* 321 U.S. 1, 10, 64 S.Ct. 397, 402, 88 L.Ed. 497 (1944), where the allegations of "willful" and "malicious" conduct were insufficient to describe more than a violation of state law, plaintiff's assertions of intentional discrimination do not raise the misconduct described in the complaint to the level of an equal protection violation. The denial of compensation to plaintiff as a contractor with the State Medicaid program, even if motivated to save money for the State and accomplished by illegal means, is not purposeful discrimination which violates defendant's equal protection rights. Consequently, the court shall dismiss plaintiff's denial of equal protection claim.

### III. CONCLUSION

The court finds for the above-stated reasons that this case must be dismissed as barred by the Eleventh Amendment and for failure to state a claim. Defendant's motion is granted.

**IT IS SO ORDERED.**

## MEMORANDUM AND ORDER

This case is now before the court upon plaintiff's motion to alter or amend the judgment and for reconsideration. Plaintiff's motion asks the court to alter its previous ruling granting defendant's motion to dismiss.

Plaintiff's complaint alleges that defendant has and continues to violate plaintiff's rights under the federal Medicaid statute and the Constitution by refusing to make payments and seeking refunds of payments made for "preadmission screening and resident review" ("PASARR") services under the Kansas Medicaid program. The court has ruled that plaintiff's complaint should be dismissed pursuant to the Eleventh Amendment and for failure to state a claim. In the instant motion, plaintiff disagrees with the court's Eleventh Amendment analysis and asserts that plaintiff can use § 1983 to enforce a right to payment for PASARR services under the Medicaid statute.

Although plaintiff asserts in its motion that "this action seeks only prospective relief to prevent an ongoing violation of rights," the first amended complaint in this case asks, in addition to prospective relief, for a declaratory judgment that plaintiff is entitled to be compensated for the preadmission assessments it performed. A declaratory judgment to this effect could be used in state court to require the State of Kansas to pay money from its treasury to plaintiff for the assessments plaintiff performed. To this extent, the plaintiff's complaint appears to seek the type of end run around the Eleventh Amendment which the Supreme Court denied in *Green v. Mansour*, 474 U.S. 64, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985).

Injunctive relief regarding future actions by defendant is not barred by the Eleventh Amendment. The court's prior order should not be read as holding that the Eleventh Amendment would bar this court from considering a claim for prospective injunctive relief. *Id.* at 68. But, plaintiff's claim for relief extends beyond a request for an injunction. Plaintiff asks for a declaratory judgment that plaintiff is entitled to compensation from the State of Kansas. We believe the Eleventh Amendment bars this court from considering such a claim.

Plaintiff's other argument in the instant motion insists that plaintiff has stated a valid claim for relief under § 1983. Previously, this court held that the Medicaid statute did not create an enforceable right for plaintiff or other providers of PASARR services under § 1983. The court has reviewed our prior decision and remains convinced that this case is distinguishable from *Wilder v. Virginia Hospital Ass'n*, 496 U.S. 498, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990). Contrary to the findings in *Wilder*, the court is not convinced that plaintiff is the intended beneficiary of the PASARR program or that there is an enforceable standard of compensation which this court could apply.

In conclusion, after due consideration, the motion to alter or amend the judgment and for reconsideration shall be denied.

**IT IS SO ORDERED.**